OPINION
 

 By the Court,
 

 Shearing, J.:
 

 Appellant Jose Gallimort, convicted on kidnapping and battery charges, argues that he should be granted a new trial because he was not provided a qualified interpreter during each day of his trial, and because he did not waive his right to a jury trial. Gallimort also contends that his conviction should be reversed because the police failed to preserve material evidence. We disagree with Gallimort’s arguments and affirm his conviction.
 

 BACKGROUND
 

 Gallimort and Cynthia Rozier had been living with each other on a sporadic basis for approximately two years. During this time, Rozier had made allegations of physical abuse and had at one point obtained a restraining order against Gallimort. Eventually Gallimort moved out of Rozier’s apartment.
 

 
 *317
 
 At trial, Rozier testified that during the process of moving out, Gallimort arrived at her apartment with a friend to remove Gallimort’s possessions. Rozier stated that instead of taking his things and departing, Gallimort beat and kicked her, causing injuries to her eye, mouth, and rib cage. Pointing a pistol at Rozier, Gallimort then instructed her to dance with his friend. Rozier testified that Gallimort also threatened to kill her.
 

 Minutes later, Gallimort’s friend left the apartment after engaging in a disagreement with Gallimort. Then, with a kitchen knife and the pistol, Gallimort forced Rozier into his car and instructed her to drive. After an hour of driving, Gallimort allowed Rozier to stop to use a restroom at a convenience store. However, Gallimort changed his mind and refused to allow Rozier to exit the vehicle. Inside the car, a struggle ensued during which Gallimort inflicted shallow knife wounds to Rozier’s neck, hands, chest, and shoulder.
 

 Rozier testified that she was able to escape the car, but Gallimort pursued her with the knife, slashing her in the back. During the chase, they activated a car alarm on a parked car, which made local residents come out of their houses to discover what instigated the alarm. While residents watched, Gallimort fled the scene. Rozier was speaking with a police officer who arrived on the scene, when she identified a car returning to the scene as Gallimort’s. Eyewitnesses also recognized the vehicle. Rozier was then taken to the hospital for her cuts, bruises, and multiple stab wounds.
 

 When Rozier returned to her apartment after two days at the hospital and a women’s shelter, she found her clothes torn and many of her possessions gone.
 
 [1]
 
 During Rozier’s search of the premises, she found the gun and knife she believed Gallimort used. The police collected the gun, but not the knife. Rozier was not sure that the knife, which had been washed, was the one Gallimort used, so the police apparently decided it was not of sufficient evidentiary value to collect it. Because the police did not collect the knife, Rozier disposed of it.
 

 At pre-trial hearings, Gallimort was afforded a Spanish-speaking interpreter. The record also reflects the presence of an interpreter on the first day of trial. While the trial transcript does not mention an interpreter on the second day of trial, another district court document shows the presence of two interpreters that day, one in the morning and another in the afternoon.
 

 On the first day of trial, Gallimort orally waived his right to a jury trial. After both sides made their closing arguments, the
 
 *318
 
 court discovered that Gallimort had not signed a written waiver of the jury trial:
 

 THE COURT: Another matter of housekeeping. It’s been brought to my attention that the waiver of jury trial, the formal document waiving jury trial, has not been executed by the defendant.
 

 Mr. Gallimort, I would ask you to waive that, in keeping with your request for a bench trial. The record will reflect the waiver has been signed.
 

 The judge then ruled that Gallimort was guilty of first-degree kidnapping with the use of a deadly weapon and battery with the use of a deadly weapon.
 

 DISCUSSION
 

 Gallimort alleges that interpreters were not provided for him at all stages of the trial and that those interpreters who were provided at some stages of the trial were not qualified. We reject these contentions for three reasons. First, a district court document shows that an interpreter was present throughout Gallimort’s trial. Second, similar to the circumstances in State v. Langarica, 107 Nev. 932, 935, 822 P.2d 1110, 1112 (1991), at Gallimort’s trial there were neither allegations of inaccurate translation nor any evidence that Gallimort misunderstood any testimony. Third, Gallimort’s due process rights were not violated since he was able—through an interpreter—to assist counsel in his defense.
 
 See, e.g.,
 
 Ton v. State, 110 Nev. 970, 972, 878 P.2d 986, 987 (1994). Since there was no objection during trial and no allegation or evidence that Gallimort did not understand the interpreter, Gallimort’s contention that the interpreters were not qualified is unsupported.
 

 Gallimort argues that he did not knowingly and intelligently waive his right to a jury trial.
 
 See, e.g.,
 
 Adams v. U.S. ex rel. McCann, 317 U.S. 269, 277 (1942) (stating that accused must be competent to exercise an intelligent and informed waiver of the right to trial by jury). We review the waiver of a jury trial de novo.
 
 See
 
 United States v. Robertson, 45 F.3d 1423, 1430 (10th Cir. 1995). NRS 175.011(1) allows a defendant to waive his right to trial by jury when the defendant makes a written waiver and the court and the state consent to the jury trial waiver. In this case, Gallimort signed the written waiver after the trial. The trial judge requested that Gallimort sign the written waiver just before the judge pronounced his verdict, and Gallimort complied with
 
 *319
 
 the judge’s request. While the written waiver should have been signed before trial, we conclude that a new trial is unwarranted because Gallimort made an oral knowing and intelligent waiver of his right to trial by jury on the record before the bench trial commenced.
 

 The United States Court of Appeals for the Ninth Circuit in Brown v. Bums, 996 F.2d 219 (9th Cir. 1993), faced a situation similar to the one we face today. In
 
 Bums,
 
 the defendant did not sign a written waiver as required by Nevada statute.
 
 See id.
 
 at 220-21. However, the trial judge and the defendant had engaged in a dialogue about the differences between a bench trial and a jury trial. After this conversation, the defendant waived his right to a jury trial. The Ninth Circuit held that the defendant’s express waiver in open court satisfied the constitutional requirement of a knowing, intelligent, and voluntary waiver.
 
 See id.
 
 at 221.
 

 Gallimort and the trial judge in this case discussed Gallimort’s wish to waive his right to a jury trial.
 
 [2]
 
 The record reflects that Gallimort was aware that he had two options: a trial by jury or a bench trial. He was told that in a jury trial the members of the jury would determine his guilt whereas only the judge would have this authority in a bench trial. It is also relevant that Gallimort had spoken to his attorney about the option of a jury trial or a bench trial.
 
 See Adams,
 
 317 U.S. at 277. Gallimort’s attorney advised a bench trial. Thus, we conclude that the district court did
 
 *320
 
 not err in finding that Gallimort was aware of his right to trial by jury and that he waived that right knowingly and intelligently.
 

 We take this opportunity to establish prospective guidelines for the district court to follow when a defendant wishes to waive the right to jury trial. The United States Courts of Appeals for the Sixth and Tenth Circuit have announced a suggested jury trial waiver procedure which we endorse. These courts instruct district court judges to inform defendants of the following: (1) the number of members of the community composing a jury; (2) the defendant’s ability to take part in jury selections; (3) the requirement that jury verdicts must be unanimous; and (4) that the court alone decides guilt or innocence if the defendant waives a jury trial.
 
 See Robertson,
 
 45 F.3d at 1432;
 
 see also
 
 United States v. Martin, 704 F.2d 267, 274-75 (6th Cir. 1983) (referring to United States v. Delgado, 635 F.2d 889, 890 (7th Cir. 1981)). By informing a defendant of these aspects of a jury trial versus those of a bench trial, the district court will be better able to determine whether a proposed waiver is actually knowing and voluntary. While we do not create a mandatory procedure for district courts, we urge district courts to instruct the defendant fully in order to avoid misunderstandings by the defendant.
 

 Gallimort also argues that his conviction should be reversed because the police did not collect the knife Gallimort allegedly used to stab Rozier, thereby causing the loss of important evidence. We apply a two-part test to determine whether a police officer’s failure to collect evidence is reversible error. Gallimort must show that the knife evidence was material, and, if the knife is material, then we consider whether the police investigator’s actions were merely negligent, grossly negligent, or conducted in bad faith to prejudice Gallimort’s defense.
 
 See
 
 Daniels v. State, 114 Nev. 261, 267-68, 956 P.2d 111, 115 (1998). We hold that it is not evident that the knife was material, but even if the knife was material, the police investigator’s failure to collect the knife was at most merely negligent.
 

 The knife is material only if there is a reasonable probability that had the evidence been available to the defense, the result of Gallimort’s trial would have been different.
 
 See id.
 
 at 267, 956 P.2d at 115. The mere possibility that the knife may have affected the outcome of the trial does not establish materiality.
 
 See
 
 United States v. Agurs, 427 U.S. 97, 109-110 (1976). When Rozier presented the knife to the police investigator she was not certain that
 
 *321
 
 the knife was the one Gallimort used to stab her. Appellant can only speculate that the knife may have aided his case.
 

 There is no reasonable probability that the availability of the knife would have resulted in a different verdict, since the knife could not be positively identified. Examination of the knife would either have confirmed that it was the knife that was used to cut Rozier if blood had been found on it, or that it was not the knife. The presence or absence of the knife would have had no effect on whether Gallimort was guilty of the crime charged. The evidence against him was the testimony of the victim and eyewitnesses and objective medical evidence of the stab wounds. Which knife was used is immaterial.
 

 Even if the knife were material, then the police investigator’s failure to collect it was at most merely negligent. There is no evidence that the police investigator acted in bad faith, purposefully concealing the existence of the knife to disadvantage the defense. In either case, the absence of the knife at trial does not mandate reversal of Gallimort’s conviction.
 
 See Daniels,
 
 114 Nev. at 267, 956 P.2d at 115.
 

 The judgment of conviction is affirmed.
 

 Maupin and Becker, JJ., concur.
 

 [1]
 

 When Gallimort was arrested, the police discovered Rozier’s personal property in Gallimort’s vehicle.
 

 [2]
 

 The conversation between Gallimort and the trial judge was as follows:
 

 THE COURT: . . . Gallimort, I am informed that you may wish to have your matter tried to the Court as opposed to a jury?
 

 THE DEFENDANT: Yes.
 

 THE COURT: Is that what you want to do, sir?
 

 THE DEFENDANT: Yes.
 

 THE COURT: Now, you understand that the jurors are right outside the room here, the courtroom. They can be brought in and you can have your trial before a jury, or not; do you understand that fully?
 

 THE DEFENDANT: Yes, I understand it in the way it was explained to me.
 

 THE COURT: Do you have any questions about your right to a trial, either before the judge or the jury?
 

 THE DEFENDANT: Yes, I do. When I ask a question like I was asking my attorney, if there’s no solution to the lies, can I then go to a jury?
 

 THE COURT: I’m not sure that I understand.
 

 THE DEFENDANT: I’m in this trial, it’s my day for trial before a judge. Then I don’t have the right to go before a jury?
 

 THE COURT: No, sir. You have only one trial at this level, and you have to either have a judge hear your case, or a jury. And it will be conducted today. What is your decision, sir?
 

 THE DEFENDANT: The judge.
 

 THE COURT: All right. Does counsel concur?
 

 MR. JORGENSON: Yes, Judge. It was my advice for various tactical reasons.