Tracy G. HUTTON, Appellant,

v.

STATE of Alaska, Appellee.

No. A–10836.

Court of Appeals of Alaska.

July 26, 2013.

Renee McFarland, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before: MANNHEIMER, Chief Judge, ALLARD, Judge, and BOLGER, Supreme Court Justice.*

## *OPINION*

BOLGER, Justice.

Tracy Hutton and Amanda Topkok were sitting in Hutton's vehicle near Tikishla Park in east Anchorage. A truck pulled up next to them, and someone fired a shot that hit Topkok in her left shoulder. Topkok asked Hutton to take her to the hospital, and he started driving in the same direction that the truck had gone. The truck stopped at a stoplight at DeBarr Road, and Hutton pulled up on the left side of the truck. Hutton then fired several shots in the direction of the truck, turned left onto DeBarr Road, and drove up to the emergency entrance at Alaska Regional Hospital across the street.

Hutton was charged with three felonies: Count I charged that Hutton committed first-degree misconduct involving weapons for knowingly discharging a firearm from a propelled vehicle under circumstances manifesting a substantial and unjustifiable risk of physical injury to a person or damage to property; Count II charged that he committed second-degree misconduct involving weapons for knowingly discharging a firearm in the direction of a dwelling; and Count III charged that he committed third-degree misconduct involving weapons for knowingly possessing a concealable firearm after having been convicted of a felony.

Before trial, Hutton requested that Count III be bifurcated so that the jury would not hear the evidence of his felony convictions when it considered the other charges. His attorney stated that "I can't imagine that we're going to request a jury decision if he's found guilty of Count I and Count II." The trial judge, Superior Court Judge Patrick J. McKay, suggested a special interrogatory, and noted that "if he's found guilty of I and II, then obviously he has a gun." Later, while the parties were discussing jury instructions before closing arguments, Hutton's

attorney stated that Hutton agreed to a special interrogatory that had been submitted by the prosecution.

Hutton did not assert any affirmative defenses at trial; the essence of his closing argument was that the State had not proven that he was the one who fired the shots at the intersection.

The jury found Hutton guilty of Count I, and not guilty of Count II, and on the special interrogatory it found that Hutton "knowingly possessed a firearm capable of being concealed on his person." After the verdict was returned, Judge McKay asked the jury to wait in the jury room while he considered the procedure to determine Count III.

Judge McKay noted that the State had proved beyond a reasonable doubt that Hutton knowingly possessed a firearm capable of being concealed on his person. Hutton's attorney indicated that Hutton wanted to admit that he had been previously convicted of a felony. After the judge had questioned Hutton about this admission, the prosecutor requested that the court confirm that Hutton was willing to waive his right to a jury trial on this issue.

Hutton expressed some confusion about this procedure and spoke with his attorney. Then the judge clarified that he could recall the jury to make a decision on Count III. But after some additional conversation, Hutton's attorney indicated that Hutton wanted to waive his right to a jury trial on this issue, and Hutton confirmed that he was making a knowing and voluntary decision to give up this right. Hutton's attorney then stipulated to the admission of judgments showing that Hutton had been convicted of felonies in 2000 and 2006. The judge then entered a guilty verdict on Count III, based on the judgments for Hutton's prior felony convictions, Hutton's admissions, and the special interrogatory concluding that Hutton had knowingly possessed a concealable firearm.

Hutton was sentenced before Superior Court Judge Jack Smith. The judge allowed Hutton to represent himself at sentencing.

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution and Administrative Rule 24(d).

Hutton argued that the presumptive sentences that would otherwise apply should be mitigated because he had been under duress when he committed these offenses. He was not willing to admit that he fired a gun, but he explained that he had driven through a red light and committed other traffic violations to avoid getting shot. He stated that he did not chase the truck; he only knew one route from the park to the hospital, and he took that route.

After Hutton's argument, Judge Smith told the State that he believed that the mitigating factor described in AS 12.55.155(d)(3) could apply to Hutton's conduct. In response, the State argued that Hutton did not take the most direct route to the hospital, that Hutton drove at a high speed to the intersection where the truck was stopped, and that Topkok testified at trial that Hutton was following the truck. The State argued that some witnesses testified that Hutton "drove fast to that intersection, and after making [a] U-turn, opened fire on this other truck, which was not any type of a duress situation." In reply, Hutton repeated that he had been required to commit several traffic violations because of the circumstances, but that "I never once shot back at them."

Judge Smith concluded that Hutton had failed to prove by clear and convincing evidence that he was acting under duress when he committed these felony offenses. Hutton now appeals from both his conviction and his sentence.

### Discussion

*The jury instructions stated the wrong mental state for the charge of misconduct involving weapons in the first degree, but this error was harmless beyond a reasonable doubt.*

The jury instruction on the elements of Count I required the State to prove that: "(1) the defendant knowingly discharged a firearm from a propelled vehicle; (2) while

the vehicle was being operated; and (3) under circumstances manifesting substantial and unjustifiable risk of physical injury to a person or damage to property." "Substantial and unjustifiable risk" was defined for the jury as "a risk of such a nature and degree that the conscious disregard of it, *or a failure to perceive it,* constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation." (Emphasis added). Hutton argues that these instructions improperly diluted the mental element required to prove this crime.

■ Hutton raised no objection to these jury instructions at trial, so he must show plain error on appeal.[1] Incorrect language in a jury instruction will be plain error when "(1) the error is not the result of an intelligent waiver or a strategic decision not to object, (2) the error affects substantial rights, (3) the error is obvious, and (4) the error is prejudicial."[2]

■ Misconduct involving weapons in the first degree is defined in AS 11.61.190(a)(2) as "discharg[ing] a firearm from a propelled vehicle while the vehicle is being operated and under circumstances manifesting substantial and unjustifiable risk of physical injury to a person or damage to property." This statute does not specify any mental element, but the phrase "substantial and unjustifiable risk" is used in the separate statutory definitions of both "recklessly" and "with criminal negligence."[3] But, "if a provision of law defining an offense does not prescribe a culpable mental state, the culpable mental state that must be proved with respect to (1) conduct is 'knowingly'; and (2) a circumstance or a result is 'recklessly.'"[4]

A person acts "recklessly" with regard to a circumstance or result when he consciously disregards a substantial and unjustifiable risk that the circumstance exists or the re-

1. *See* Alaska R.Crim. P. 30(a) ("No party may assign as error any portion of the charge or omission therefrom unless the party objects thereto before the jury retires to consider its verdict....").

2. *Lengele v. State,* 295 P.3d 931, 937 (Alaska App.2013) (citing *Khan v. State,* 278 P.3d 893, 900 (Alaska 2012)).

3. AS 11.81.900(a)(3) & (a)(4).

4. AS 11.81.610(b).

sult will occur.[5] A person acts "with criminal negligence" with regard to a circumstance or result if the person fails to perceive a substantial and unjustifiable risk that the circumstance exists or the result will occur, and if a reasonable person would have perceived that risk.[6] So proof that the offender "failed to perceive" a risk would be sufficient if the offense requires only criminally negligent misconduct, but this proof would be insufficient to show that the offender acted recklessly.

In *Smith v. State*, this court considered the presumptive term for a person convicted of first-degree misconduct involving weapons.[7] We stated that "[i]t is not clear whether the legislature intended in enacting the first-degree weapons misconduct statute to require proof of recklessness or criminal negligence when it required proof that the defendant discharged a firearm under circumstances manifesting a substantial and unjustifiable risk of physical injury."[8] We noted that the statute requires "proof that the defendant acted recklessly, or at least negligently, with respect to the possibility that discharge of a firearm might endanger someone."[9] But the question whether the statute required recklessness or mere negligence was not before us in the *Smith* case, and we did not decide which mental state was required.

The State argues that the legislative history of this statute suggests that the mental state was intended to be no greater than criminal negligence. The State first points to proceedings involving Senate Bill 194, introduced on January 8, 1996. This bill included a proposed amendment to the existing statutes to add a provision stating that a person commits misconduct involving weapons in the second degree if the person:

[KNOWINGLY] participates as a member of a criminal street gang and, acting for the benefit of, at the direction of, or in association with a criminal street gang or any of its members, the person knowingly discharges a firearm from a propelled vehicle while the vehicle is being operated and under circumstances manifesting a reckless disregard for a risk of damage to property or a risk of physical injury to a person.[10]

At a Senate Judiciary Committee meeting, a representative of the Department of Law noted that the proposed language regarding street gangs was unnecessary because the intent was to criminalize the knowing discharge of a firearm from a propelled vehicle.[11] She also suggested changing the mental state to "reckless" to be uniform with other code sections.[12] Following this testimony the bill was amended to include the language currently codified in AS 11.61.190(a)(2).[13] In the House Judiciary Committee there was testimony that one of the purposes of the bill was to elevate the crime of weapons misconduct when drive-by shootings are involved.[14]

The State argues that this history establishes that the legislature rejected recklessness in favor of a lesser mental state. But since the "substantial and unjustifiable risk" language used in AS 11.61.190 is also used in the definitions of both recklessness and criminal negligence, this history does not clearly indicate that the legislature rejected recklessness as the mental state required for this crime. In view of the presumption imposed by AS 11.81.610(b), the burden is on the State to prove that the statute requires a mental state other than recklessness. We

5. AS 11.81.900(a)(3).

6. AS 11.81.900(a)(4).

7. 28 P.3d 323, 324 (Alaska App.2001).

8. *Id.* at 325 (internal quotation marks omitted).

9. *Id.* at 326.

10. S.B. 194, 19th Leg. (1996) (the proposed amendment would remove the word [KNOWINGLY] ).

11. Minutes of Senate Judiciary Committee, Senate Bill 194, Testimony of Anne Carpeneti, 365 (Jan. 19, 1996).

12. *Id.*

13. *See* C.S.S.B. 194(JUD), 19th Leg., Second Session, *available at http://www.legis.state.ak.us/pdf/ 19/bills/sb0194b.pdf* (last visited July 9, 2013).

14. Minutes of House Judiciary Committee, Senate Bill 194, Testimony of Sherman Ernouf, 2155 (Mar. 27, 1996).

are not convinced that the State has met that burden.

The State concedes that a failure to instruct a jury on the proper mental state is a claim of constitutional error.[15] But the State argues that, assuming the instruction was improper, any reasonable juror would have concluded that Hutton acted recklessly in this case.

In *Anderson v. State*, we recently held that a jury instruction that omits an element of the offense is prejudicial if "there is a reasonable possibility that the jury would have reached a different verdict if they had been asked to decide whether the government had proved the omitted element."[16] In *Adams v. State*, the Alaska Supreme Court recently stated that another type of constitutional violation would be considered to be prejudicial unless it was shown to be harmless beyond a reasonable doubt.[17]

The element at issue in this case was the risk that discharging a firearm as Hutton did would cause physical injury to a person or damage to property. The jury verdict established that the jury necessarily found that a reasonable person in Hutton's place would have perceived that risk. Under *Anderson,* the question is whether there is a reasonable possibility that the jury, if properly instructed, would not have found that Hutton was aware of and consciously disregarded that same risk. Under *Adams,* we would ask whether the State has shown that this error was harmless beyond a reasonable doubt. We conclude that there was no prejudice to Hutton under either formulation of the question.

■ Topkok testified that, after she was shot, Hutton followed the truck, pulled up beside it, and started shooting at it. Hutton was especially likely to be aware of the risk of injury from a gunshot because his passenger had just been shot while she was sitting in his vehicle. We conclude that no reasonable juror could have concluded that Hutton was unaware of the risk of physical injury to a person or damage to property when he shot into a truck next to his vehicle.

Moreover, Hutton did not offer any evidence or argument contesting this element of the offense. The defense did not argue that the person who fired these shots was unaware of the danger involved. The defense theory at trial was that Hutton did not fire any shots. The question of whether these shots were fired recklessly or with criminal negligence was not a contested issue. We thus conclude that there is no reasonable possibility that the jury, if properly instructed, would have rendered a verdict of acquittal; the error in the jury instructions was harmless beyond a reasonable doubt.

*The superior court reasonably concluded that Hutton was guilty of misconduct involving weapons in the third degree after Hutton waived his right to a jury trial.*

Hutton also argues that the superior court erred when it determined that he was guilty of misconduct involving weapons in the third degree, the statute that prohibits a convicted felon from possessing a concealable firearm. This is the count for which Hutton's attorney requested bifurcation of the trial proceedings to prevent the trial jury from learning of his felony convictions when they considered the other elements of the pending charges. Along with its verdicts on Count I and II, the jury returned a special interrogatory finding that the State had proven that Hutton had knowingly possessed a firearm capable of being concealed on his person.

After questioning Hutton and his attorney, the court concluded that Hutton had knowingly admitted that he had previously been convicted of a felony and that Hutton had waived his right to a jury trial on this issue. The State then introduced two felony judgments showing Hutton's prior convictions for misconduct involving a controlled substance in the third degree and misconduct involving weapons in the third degree. Based on this evidence, the court concluded that Hutton

---

**15.** *See Pitka v. State*, 995 P.2d 677, 680 (Alaska App.2000) (failure to instruct on an essential element of a crime is constitutional error).

**16.** 289 P.3d 1, 6–7 (Alaska App.2012) (emphasis removed).

**17.** 261 P.3d 758, 773 (Alaska 2011).

was guilty of misconduct involving weapons in the third degree as charged in Count III.

■ Hutton argues that the special interrogatory was not adequate to advise the jury of the presumption of innocence and the requirement that the jury was required to reach a unanimous decision in its response. Hutton did not object to the wording of the special interrogatory at trial; he agreed to the interrogatory submitted by the State. Under these circumstances, Hutton must show plain error to prevail on appeal.[18]

Hutton correctly points out that criminal defendants are presumed innocent until proven guilty.[19] In this case, however, the jury was given the pattern instruction that the presumption of innocence and the burden of proof beyond a reasonable doubt are the distinguishing features of a criminal trial. This instruction indicated that the presumption of innocence and burden of proof apply to the entire trial, and did not distinguish between the verdict forms and the special interrogatory. Also, the special interrogatory itself began "Did the *State prove beyond a reasonable doubt....*" (Emphasis added). This reminded the jury that the burden was on the State and that Hutton was presumed innocent until proven guilty. Hutton has not established that the superior court committed any error with regard to the presumption of innocence.

■ Hutton also argues that the special interrogatory failed to protect his right to a unanimous jury verdict.[20] Hutton notes that the verdict forms used the phrase "We, the jury" for Counts I and II, and argues that since the special interrogatory did not use that language, there is a "significant possibility" that the jury did not understand that its decision on the special interrogatory needed to be unanimous.

In response, the State argues that the jury instructions must be viewed in context.[21] The special interrogatory was provided to the jury with the packet of jury instructions, just after the verdict form. Instruction 32 specifically told the jury that "[e]ach of your verdicts must be unanimous." Common sense indicates that the jury would probably view the special interrogatory as similar to the verdicts and apply the same rules. We conclude that Hutton has failed to establish any error in the wording of the special interrogatory.

Hutton also argues that he did not make a knowing and voluntary waiver of his right to a jury trial for this charge. Alaska Rule of Criminal Procedure 23(a) states that "[c]ases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the court and the consent of the state." However, in *Walker v. State,* the Alaska Supreme Court held that the writing requirement under Rule 23(b) (which governs how a defendant can stipulate to a trial with fewer than 12 jurors) is not absolute, and that a writing is simply the best evidence of a defendant's waiver.[22] For a valid waiver, the defendant must personally inform the court that he is giving up his right to a jury trial, and the waiver must be knowing and voluntary.[23]

In a later case, the supreme court held that a waiver colloquy was sufficient when the court confirmed that the defendant understood that he had the right to a jury trial, that if he waived this right the judge would decide the case, and that he was aware of

---

18. *See* Alaska R.Crim. P. 30(a).

19. *See In re Winship,* 397 U.S. 358, 363, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (stating that the presumption of innocence is a "bedrock axiomatic and elementary principle whose enforcement lies at the foundation of the administration of our criminal law") (internal quotation marks omitted); *Brown v. State,* 601 P.2d 221, 225 (Alaska 1979).

20. *See Khan v. State,* 278 P.3d 893, 897 (Alaska 2012).

21. *See Baker v. State,* 905 P.2d 479, 490 (Alaska App.1995) ("[J]ury instructions are not to be viewed in isolation; instead, we must assess the group of instructions as a whole.").

22. 578 P.2d 1388, 1390 (Alaska 1978).

23. *See id.* (knowing and voluntary); *McGlauflin v. State,* 857 P.2d 366, 368 (Alaska App.1993) (personal, knowing, voluntary, and intelligent), abrogated on other grounds by *State v. Coon,* 974 P.2d 386 (Alaska 1999).

what he was doing by signing the waiver.[24] The proper standard of review for considering the validity of a jury trial waiver is whether the trial court's finding is supported by substantial evidence.[25]

█ In this case, Hutton initially said he was willing to admit that he had previously been convicted of a felony, and then he equivocated. But then the court gave Hutton an opportunity to speak with his attorney. The court then clarified that Hutton understood that he did not have to admit his prior felony convictions, that he could make the State prove the prior felony convictions, that Hutton made his admission voluntarily, and that he knew what he was doing.

After the judge accepted Hutton's admission, the prosecutor noted that Hutton had the right to a jury trial on Count III. Judge McKay again told Hutton that he could make the State prove Hutton's prior convictions to a jury beyond a reasonable doubt. When Hutton said, "You know, it's not making that much sense to me," Judge McKay explained that Hutton could waive his right to a jury trial and try that one element to the court or he could just let the jury hear the issue.

Judge McKay then asked if Hutton wanted a jury trial or a court trial. Hutton spoke with his attorney, who said that Hutton was willing to waive his right to a jury regarding his prior convictions. The court addressed Hutton personally, and asked if Hutton understood that based on the jury's conclusion that he had possessed a handgun, the judge would find that he was guilty of this charge. Hutton indicated that he understood. The court asked Hutton if he knew he was giving up his right to a jury trial on the issue and if he made this decision knowingly, and Hutton responded, "Yes."

Judge McKay again asked whether Hutton understood he was waiving his right to a jury trial on the issue of whether he was a convicted felon; Hutton responded yes. Judge McKay clarified that Hutton could appeal the jury's finding that he possessed a concealable handgun, but not the issue of whether he was a convicted felon. Hutton stated that he understood, that he was willing to waive his right to a jury trial knowingly and voluntarily, and that he had enough time to talk with his attorney. The prosecutor then offered judgments of two of Hutton's previous felonies into evidence, and Hutton's attorney stipulated that these judgments should be admitted.

Although Hutton expressed hesitation several times during this colloquy, he was able to speak with his attorney every time he had a question. We conclude that there is substantial evidence that Hutton knowingly, intelligently, and voluntarily waived his right to a jury trial on the issue of whether he had any prior felony convictions.

█ Hutton also argues that the jury did not determine whether Hutton recklessly disregarded the fact that he had previously been convicted of a felony. To convict a person of third-degree misconduct involving weapons in the third degree, it is not enough to show that the person had a prior felony conviction; it must also be proven that the defendant recklessly disregarded the fact of his prior conviction.[26]

Again, Hutton did not raise this issue in the superior court, so we must find plain error to reverse this conviction, including a finding of prejudice.[27] As noted above, we recently held that a jury instruction that omits an element of the offense is prejudicial if "there is a reasonable possibility that the jury would have reached a different verdict if they had been asked to decide whether the government had proved the omitted element."[28] And the Alaska Supreme Court recently stated that another type of constitutional violation would be considered to be prejudicial unless it was shown to be harm-

---

**24.** *Walunga v. State,* 630 P.2d 527, 528 n. 6 (Alaska 1980).

**25.** *Id.* at 528 n. 4.

**26.** *See Afcan v. State,* 711 P.2d 1198, 1199 (Alaska App.1986) (recklessness is the applicable mental state for the circumstances of this offense).

**27.** *Lengele v. State,* 295 P.3d 931, 937 (Alaska App.2013).

**28.** *Anderson v. State,* 289 P.3d 1, 6–7 (Alaska App.2012) (emphasis removed).

less beyond a reasonable doubt.[29]  Again, we conclude that Hutton did not suffer any prejudice when judged under either standard.

At trial, the evidence that Hutton knew that he had been convicted of two prior felonies was uncontested.  One exhibit established that on November 22, 2000, Hutton had been convicted on his plea to the charge of misconduct involving a controlled substance in the third degree.  A second exhibit showed that on February 17, 2006, Hutton had been convicted on his plea to misconduct involving weapons in the third degree for being a felon in possession of a concealable firearm, the same charge involved in this case.  (The circumstances of this 2006 conviction would require Hutton to be aware of the fact that he had previously been convicted of a felony in August 2000.)  Hutton's signature appears at the conclusion of the 2006 judgment.  Based on these exhibits, the trial judge could reasonably conclude that Hutton knew that he had been convicted of these felonies.

Moreover, Hutton never argued to the court or to the jury that he was not aware that he had been convicted of the felony.[30]  The entire point of the special interrogatory was to remove any issue concerning his convictions from consideration by the trial jury and to leave this issue up to the trial judge.  At the conclusion of trial, Hutton admitted that he had previously been convicted of a felony, and the trial judge found that his admission was knowing and voluntary.  Hutton's knowing admission that he had previously been convicted of a felony necessarily established that he knew that he had been previously convicted of a felony.  We conclude that the trial court's failure to specifically address this issue was harmless beyond a reasonable doubt;  there is no reasonable possibility that a judge or jury could reach a different conclusion on this issue.

*The sentencing court reasonably concluded that Hutton was not acting under duress.*

■  Hutton also argues that the superior court erred at the sentencing hearing when it rejected his proposed mitigating factor, that he committed the offense under "some degree of duress, coercion, threat, or compulsion insufficient to constitute a complete defense."[31]  We review the superior court's factual findings regarding the nature of a defendant's conduct for clear error, but independently review whether, given those findings, the defendant has established the mitigating factor.[32]

■  To establish the duress mitigating factor, a defendant must present facts that would come close to establishing a trial defense.[33]  The mitigating factor "is not so broad as 'to encompass behavior that is merely impulsive or the result of situational stress.' "[34]

In this case, some of the circumstances could suggest that Hutton was shooting at the truck in self defense—to protect himself and his passenger while he drove to the hospital.  At sentencing, Hutton argued that the route he took was the only one he knew to get to the hospital, and that he did not try to pursue the truck.  But Hutton never offered any evidence that he fired shots into the truck because he was required to do so.  Instead, Hutton consistently argued that he should not have been convicted, because the State did not prove that he shot at the truck.

■  The sentencing judge found that Hutton had not proven this mitigating factor by clear and convincing evidence.  In particular, the judge found that although Hutton

**29.** *Adams v. State,* 261 P.3d 758, 773 (Alaska 2011).

**30.** *See Sergie v. State,* 105 P.3d 1150, 1155 (Alaska App.2005).

**31.** AS 12.55.155(d)(3).

**32.** *Michael v. State,* 115 P.3d 517, 519 (Alaska 2005).

**33.** *See Hart v. State,* 702 P.2d 651, 663–64 (Alaska App.1985) (holding that mental illness that did not establish a trial defense could qualify as a mitigating factor); *Bell v. State,* 658 P.2d 787, 791 (Alaska App.1983) (holding that facts that would come close to establishing a necessity defense would establish this factor).

**34.** *Bynum v. State,* 708 P.2d 1293, 1294 (Alaska App.1985) (quoting *Lee v. State,* 673 P.2d 892, 896 (Alaska App.1983)).

was initially a victim, he then chased the shooter and endangered others by engaging in a "gun battle."

Topkok's trial testimony provided a sufficient basis for these factual findings. We therefore conclude that these findings were not clearly erroneous. Based on these findings, we agree with the judge's conclusion that Hutton had not proven this mitigating factor.

*Conclusion*

We AFFIRM the superior court's judgment.

