*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| TRACY G. HUTTON, | ) | |
| | ) | Supreme Court No. S-15266 |
| Petitioner, | ) | Court of Appeals No. A-10836 |
| | ) | |
| v. | ) | Superior Court No. 3AN-08-11797 CR |
| | ) | |
| STATE OF ALASKA, | ) | O P I N I O N |
| | ) | |
| Respondent. | ) | No. 7014 – June 5, 2015 |
| _____ | ) | |

Petition for Hearing from the Court of Appeals of the State of Alaska, on appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Patrick J. McKay and Jack W. Smith, Judges.

Appearances: Renee McFarland, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for Petitioner. Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for Respondent.

Before: Fabe, Chief Justice, Stowers, and Maassen, Justices. [Winfree and Bolger, Justices, not participating.]

STOWERS, Justice.

## I.    INTRODUCTION

A man was arrested and charged with three counts of weapons misconduct. After the first two counts were tried to a jury, he waived his right to a jury trial and the

third count was tried to the court. He was convicted and appealed, arguing that he had not effectively waived his constitutional right to a jury trial. The court of appeals affirmed his conviction, holding that substantial evidence supported his waiver. We granted his petition for hearing to decide the appropriate standard of review for the waiver of the right to a jury trial. We now conclude that an appellate court should review the superior court's factual findings for clear error and its ultimate conclusion regarding the waiver's constitutional validity de novo because whether a defendant made a constitutionally valid waiver is a mixed question of law and fact.

At oral argument to this court, the State conceded the defendant was not advised of an essential element of the third count and that he was misadvised of the elements of his offense. Because the defendant was given incomplete and misleading information about the charge for which he was being asked to waive his right to a jury trial, we conclude that his waiver was constitutionally defective. The court of appeals' decision is reversed, and the case is remanded to the superior court for a new trial.

## II.    FACTS AND PROCEEDINGS

On March 30, 2008, Tracy G. Hutton and Amanda Topkok were parked near Tikishla Park. A truck pulled up beside them, and a shot was fired into their vehicle, hitting Topkok in the shoulder. Hutton decided to follow the truck instead of taking her directly to the emergency room. He followed the truck until it stopped at a red light and fired three to four times at the truck with a handgun. Afterwards, Hutton took Topkok to Alaska Regional Hospital and drove away.

The State charged Hutton with weapons misconduct in the first and second degrees.[1] Because he had a prior felony conviction, the State also charged him with

---

[1]     Under AS 11.61.190(a) a person commits first-degree weapons misconduct if "the person . . . discharges a firearm from a propelled vehicle while the vehicle is being
(continued...)

weapons misconduct in the third degree: "knowingly possess[ing] a firearm capable of being concealed on one's person after having been convicted of a felony . . . by a court of this state, a court of the United States, or a court of another state or territory."[2] Recklessness is the applicable mental state for the circumstances of this offense.[3]

The three charges were tried in a bifurcated proceeding, with the first two counts decided by a jury. A special interrogatory asked the jury if Hutton knowingly possessed a concealable firearm. The jury returned a verdict of guilty on the charge of weapons misconduct in the first degree but not guilty on the charge of weapons misconduct in the second degree, and found that Hutton had knowingly possessed a concealable firearm. After the jury returned the verdict, the parties and court discussed whether Hutton would proceed to a jury trial on Count III — felon in possession — or whether he would admit that count.

The superior court stated that "[w]ith regard to Count III, the [S]tate has proved, beyond a reasonable doubt, according to the jury, the firearm portion of it. The second portion of it of course is the fact that Mr. Hutton must have been found to be a convicted felon. It's my understanding that Mr. Hutton is willing to admit that; is that correct?" Hutton's attorney answered, "Yes," but Hutton's answer was indiscernible. The court again explained the situation to Hutton, and this time he answered, "Yeah,"

---

[1](...continued)
operated and under circumstances manifesting substantial and unjustifiable risk of physical injury to a person or damage to property." As relevant, a person commits second-degree weapons misconduct under AS 11.61.195(a)(3) if "the person knowingly . . . discharges a firearm at or in the direction of (A) a building with reckless disregard for a risk of physical injury to a person; or (B) a dwelling."

[2]      AS 11.61.200.

[3]      *See Afcan v. State*, 711 P.2d 1198, 1199 (Alaska App. 1986).

when asked if he was willing to admit that he had previously committed a felony. The court asked Hutton if anyone had threatened or coerced him in regards to the admission, to which Hutton responded, "No." The court stated, "And there's been no promises made for you to do this, correct? I have to make a finding that you know what you're doing and that you're doing this voluntarily. Do you know what you're doing? Have you had enough time to talk with your lawyer about it?" Hutton responded, "Yeah." Then the court rephrased the issue, explaining that "basically what you're doing is you're admitting one element of the charge against you." At this point Hutton interrupted the judge and said, "Oh, no, no, no, no. I don't want to admit that."

After an off-the-record discussion with his attorney, Hutton told the judge to "[g]o ahead" and find that he was voluntarily giving up his right to a jury trial, but then moments later said, "You know, it's not making much sense to me." The court again tried to explain the situation to Hutton. This time Hutton seemed to understand and answered, "Yes," to the court's routine questions concerning voluntariness.[4]

---

[4] Here is the court's and Hutton's colloquy:

The Court: And understanding that that basically means that, with what the jury found, the – there will be a conviction of record. Do you understand that?

Mr. Hutton: Uh-huh (affirmative).

The Court: And your answer – you're nodding your head yes? Okay.

Mr. Hutton: Yeah.

The Court: And you're doing this knowingly, and you're giving up . . . .

Mr. Hutton: Yeah.

The Court: . . . your right to a jury trial . . . .

(continued...)

Ultimately, the court asked: "You're waiving your right to a jury trial on the fact — on the issue of whether or not you're a convicted felon. Do you understand that?" Hutton answered, "Yes." The court accepted this waiver and admission.

Hutton was sentenced to three years' imprisonment for Count III and appealed, arguing that he had not knowingly waived his right to a jury trial.[5] The court of appeals affirmed, holding that there was substantial evidence that Hutton had waived his right to a jury trial on Count III.[6]

Hutton petitioned for hearing, and we granted review in order to decide the standard of review for waiver of the right to a jury trial.

## III. STANDARD OF REVIEW

Determining the appropriate standard of review is a question of law that we review de novo.[7] When we review an issue de novo, we "adopt the rule that is most persuasive in light of precedent, reason, and policy."[8]

---

[4](...continued)
        Mr. Hutton: Yeah.

[5]     *Hutton v. State*, 305 P.3d 364, 370 (Alaska App. 2013).

[6]     *Id.* at 371.

[7]     *In re Life Ins. Co. of Alaska*, 76 P.3d 366, 368 (Alaska 2003) ("The question whether the superior court applied the proper standard of review in denying [the] claim is a question of law to which we apply our independent judgment."); *see also VECO Alaska, Inc. v. State, Dep't of Labor, Div. of Workers' Comp., Second Injury Fund*, 189 P.3d 983, 987 (Alaska 2008) (deciding the standard of review as a matter of law).

[8]     *State v. Gonzales*, 156 P.3d 407, 411 (Alaska 2007) (quoting *Guin v. Ha*, 591 P.2d 1281, 1284 n.6 (Alaska 1979)) (internal quotation marks omitted).

## IV.    DISCUSSION

The State argues that an earlier case, *Walunga v. State*,[9] already decided the standard of review for a jury-trial waiver and that, even if it did not decide the issue, substantial evidence is the correct standard. Hutton argues that the mixed question of law and fact standard is correct because the ultimate issue is a question of law.

### A.    *Walunga v. State* Did Not Decide The Standard Of Review For Jury-Trial Waivers.

In 1973, Allen Walunga was charged with first-degree murder and assault with intent to kill.[10] Walunga filed a written waiver of his right to a jury trial, and his counsel later submitted an affidavit stating that Walunga was competent to make a valid waiver.[11] The superior court did not independently inquire of Walunga whether he was competent to make a valid waiver but engaged in its standard colloquy on voluntariness.[12] Walunga was tried without a jury, convicted, and sentenced to life in prison.[13] He moved for post-conviction relief, arguing that his jury-trial waiver was deficient.[14] The superior court concluded that the waiver passed constitutional muster because the evidence showed that Walunga was competent.[15] Walunga appealed,

---

[9]    630 P.2d 527 (Alaska 1980) (per curiam).

[10]    *See id.* at 527.

[11]    *Id.* at 527-28.

[12]    *Id.* at 528 & n.6.

[13]    *Id.* at 527-28.

[14]    *Id.* at 527.

[15]    *State v. Walunga*, No. 72-00206 CR, at 4-5 (Alaska Super. 4th Dist, Fairbanks, Jan. 26, 1979).

arguing that he was incapable of effectively waiving his right to a jury trial and that the superior court erred by not independently inquiring of him whether he was competent.[16]

We affirmed, holding that Walunga was competent to make a valid waiver and that the superior court did not need to independently inquire of Walunga regarding his competency.[17] In the section of our opinion discussing competency, we noted that "[n]either party explicitly discusses the standard of review for trial court findings regarding waiver of this constitutional right," and held that the proper standard was "substantial evidence."[18] We concluded that there was substantial evidence in the record demonstrating that Walunga was competent to waive his rights, and that "sufficient evidence of Walunga's capacity . . . obviate[d] the need to inquire of Walunga himself."[19]

In *Walunga* we did not frame the issue as waiver of the right to a jury trial; we framed the issue as one of competency: Walunga "claim[ed] that he was incapable of effectively waiving his constitutional right to trial by jury because of mental illness, and that the superior court erred in failing to inquire into [his] capacity."[20] And we held that the "superior court's holding [regarding competency] is supported by substantial evidence."[21] We explained that "Walunga contend[ed] that [the] inquiry was insufficient,

---

[16]  *Walunga*, 630 P.2d at 527.

[17]  *Id.* at 528-29.

[18]  *Id.* at 528 n.4.

[19]  *Id.* at 529.

[20]  *Id.* at 527 (footnote omitted).

[21]  *Id.* at 528.

because it did not delve into his mental state,"[22] but "[g]iven the psychiatric testimony before the superior court . . . and Walunga's attorney's belief in his client's competency . . . [,] there was sufficient evidence of Walunga's capacity to obviate the need to inquire of Walunga himself."[23]  Moreover, the cases we cited for the substantial evidence standard — *Hampton v. State*[24] and *Naples v. United States*[25] — only discuss competency, not waiver generally.[26]  And two years after we decided *Walunga*, we explained, "As we noted in *Walunga v. State*, . . . 'the proper standard of review is whether the superior court's finding of [competence to make the] waiver is supported by substantial evidence.' "[27]  Thus, *Walunga* did not decide the standard of review for a waiver of jury trial.

B.    **Whether A Defendant Made A Constitutionally Valid Waiver Is A Mixed Question Of Law And Fact.**

Hutton argues that a majority of jurisdictions use the mixed question of law and fact standard of review and that this standard best reflects the legal nature of the ultimate decision:  whether a defendant made a constitutionally valid waiver of his right to a jury trial.  The State argues that unlike waivers of *Miranda* rights[28] and voluntariness

---

[22]    *Id.*

[23]    *Id.* at 528-29.

[24]    569 P.2d 138 (Alaska 1977).

[25]    307 F.2d 618 (D.C. Cir. 1962).

[26]    *See Naples*, 307 F.2d at 626; *Hampton*, 569 P.2d at 143.

[27]    *Dolchok v. State*, 639 P.2d 277, 294 (Alaska 1982) (second alteration in original) (quoting *Walunga*, 630 P.2d at 528 n.4).

[28]    *Miranda v. Arizona*, 384 U.S. 436, 444 (1966) ("Prior to any questioning,
(continued...)

of confessions,[29] because a jury-trial waiver is made in the presence of the trial court, the trial court is in the best position to determine the validity of the waiver, and the trial court's decision should be reviewed under the substantial evidence standard.

While courts do not all agree, a majority of jurisdictions treat the ultimate issue as one of law. Eight of the ten federal circuits that have made a clear pronouncement on the topic have applied the mixed question of law and fact standard.[30] And a definitive majority of states that have clearly addressed the topic have also applied the mixed

---

[28](...continued)
the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly[,] and intelligently.").

[29]    *Beavers v. State*, 998 P.2d 1040, 1044 (Alaska 2000) ("A confession is not admissible into evidence unless it is voluntary." (quoting *Sovalik v. State*, 612 P.2d 1003, 1006 (Alaska 1980)) (internal quotation mark omitted)).

[30]    *United States v. Reynolds*, 646 F.3d 63, 75 (1st Cir. 2011) ("For preserved claims, '[w]e review factual findings by the district court for clear error and the determination of whether a waiver of rights was voluntary de novo.' " (quoting *United States v. Frechette*, 456 F.3d 1, 11 (1st Cir. 2004))); *United States v. Griffin*, 394 F. App'x 349, 351 (8th Cir. 2010) (per curiam) (reviewing the jury waiver new novo); *United States v. Carmenate*, 544 F.3d 105, 107 (2d Cir. 2008) (holding that "whether a defendant has effectively waived his federal constitutional rights in a proceeding is ultimately [a] legal question" (quoting *Oyague v. Artuz*, 393 F.3d 99, 104 (2d Cir. 2004)) (alteration and internal quotation marks omitted)); *United States v. Diaz*, 540 F.3d 1316, 1321 (11th Cir. 2008) (applying de novo review); *United States v. Khan*, 461 F.3d 477, 491 (4th Cir. 2006) (reviewing whether jury-trial waiver was effective de novo); *United States v. Watts*, 45 F. App'x 323, 2 (5th Cir. 2002) (per curiam) (applying de novo review); *Lott v. Coyle*, 261 F.3d 594, 610 (6th Cir. 2001) (applying de novo review); *United States v. Duarte-Higareda*, 113 F.3d 1000, 1002 (9th Cir. 1997) (applying de novo review).

standard,[31] but for differing reasons. A handful of these states have applied de novo review because the issue was constitutional,[32] but the majority have reviewed the

---

[31]     *See, e.g.*, *State v. Vann*, 2010 WL 2602000, at *2 (Ariz. App. June 29, 2010) ("Consequently, we review de novo whether the superior court obtained a valid waiver of Vann's right to a jury trial, but we defer to the court's factual findings." (citing *State v. Winegar*, 711 P.2d 579, 584 (Ariz. 1985))); *Brown v. State*, 721 A.2d 1263, 1266 (Del. 1998) (applying de novo review); *State v. Gomez-Lobato*, 312 P.3d 897, 900-01 (Haw. 2013) (applying de novo review); *State v. Stallings*, 658 N.W.2d 106, 108 (Iowa 2003) ("The adequacy of a jury-trial waiver is a mixed question of fact and law, which an appellate court decides de novo.") *overruled on other grounds by State v. Feregrino*, 756 N.W.2d 700, 708 (Iowa 2008); *State v. Duncan*, 243 P.3d 338, 340-41 (Kan. 2010) ("When the facts are undisputed, whether a defendant knowingly and voluntarily waived his right to a jury trial is a question of law subject to unlimited review."); *State v. Poole*, 46 A.3d 1129, 1131 (Me. 2012) ("When reviewing whether a defendant has effectively waived the jury trial right, we review the court's factual findings for clear error and its legal conclusions de novo."); *State v. Kuhlmann*, 806 N.W.2d 844, 848-49 (Minn. 2011) (applying de novo review); *State v. Thompson*, 83 A.3d 388, 393 (N.H. 2013) ("Whether the facts support a valid waiver is a question of law which we review de novo." (*quoting State v. Foote*, 821 A.2d 1072, 1074 (N.H. 2003)) (internal quotation marks omitted)); *Gallimort v. State*, 997 P.2d 796, 798 (Nev. 2000) (applying de novo review); *State v. Redden*, 487 S.E.2d 318, 323-24 (W.Va. 1997) (applying de novo review); *State v. Anderson*, 638 N.W.2d 301, 306 (Wis. 2002) (applying de novo review).

[32]     *See State v. Gomez-Lobato*, 312 P.3d 897, 900-01 (Haw. 2013) ("The validity of a criminal defendant's waiver of his or her right to a jury trial presents a question of state and federal constitutional law. . . . We answer questions of constitutional law by exercising our own independent constitutional judgment based on the facts of the case." (alteration in original)); *State v. Kuhlmann*, 806 N.W.2d 844, 848-49 (Minn. 2011) ("Whether a criminal defendant has been denied the right to a jury trial is a constitutional question that we review de novo."); *State v. Vasquez*, 34 P.3d 1255, 1260 (Wash. App. 2001) ("Because it implicates the waiver of an important constitutional right, our review is de novo."); *State v. Anderson*, 638 N.W.2d 301, 306 (Wis. 2002) ("Whether an individual is denied a constitutional right is a question of constitutional fact that this court reviews independently as a question of law." (quoting *State v. Klessig*, 564 N.W.2d 716, 721 (Wis. 1997)) (internal quotation marks omitted)).

ultimate conclusion de novo because the issue is a mixed question of law and fact. There are only a few states that after fully considering the issue have applied a deferential standard of review.[33]

The mixed question of law and fact standard of review correctly reflects the reality that whether a defendant made a constitutionally valid waiver of his right to a jury trial is a legal question. As both parties agree, the superior court's underlying factual findings should be reviewed for clear error. But the ultimate conclusion drawn from those facts — whether a defendant's waiver is constitutionally sufficient — is a question of law the appellate court reviews de novo.

The State argues that because the jury-trial waiver happens in the presence of the trial court, we should review it deferentially. The State contends that we review *Miranda* waivers and confessions de novo because these happen outside of the courtroom. But in *Miranda* and confession cases our application of de novo review is not premised on the fact that the crucial exchanges happened outside the presence of the court.[34] In *State v. Ridgely*, we held that "[w]hen an appellate court reviews a trial

---

[33] *See State v. Hall*, 582 A.2d 507, 509 (Md. 1990) ("Considering the totality of the circumstances in the present case, we think that the trial judge could fairly find that Hall intentionally relinquished his known right to a jury trial by his voluntary act in waiving that right." (citation omitted)); *Commonwealth v. Schofield*, 463 N.E.2d 1181, 1184 (Mass. 1984) ("In the instant case there is adequate support for the judge's decision."); *Defrancisco v. State*, 656 S.E.2d 238, 241 (Ga. App. 2008) ("A trial court's ruling as to whether a defendant knowingly, intelligently, and voluntarily waived his right to a jury trial is also reviewed under a clearly erroneous standard.").

[34] *State v. Ridgely*, 732 P.2d 550, 554 (Alaska 1987) (explaining that voluntariness is a mixed question without making any reference to the inquiry happening out of the presence of the court); *Giacomazzi v. State*, 633 P.2d 218, 222 (Alaska 1981) (explaining that waiver is a mixed question without making any reference to the inquiry happening out of the presence of the court); *Troyer v. State*, 614 P.2d 313, 318 (continued...)

judge's determination of voluntariness, its standard of review reflects the mixed factual and legal nature of the voluntariness inquiry."[35] It is the voluntariness inquiry itself — not when or where that inquiry happened — that mandates the mixed standard. The issue is whether a certain set of facts legally amounts to a valid constitutional waiver, and the trial court is in no better position to answer that legal question than is an appellate court. A question of law does not require credibility determinations that merit deferential review of the trial court's decision. We conclude that when an appellate court reviews whether a defendant made a constitutionally valid waiver of his right to a jury trial, the court should apply the standard for mixed questions of law and fact.

## C.      Hutton's Waiver Was Invalid.

In its briefing, the State argues that even were we to review the superior court's waiver conclusion de novo, we should affirm because (1) Hutton had just participated in a jury trial on Counts I and II and knew what a jury trial would entail; (2) the judge had explained the process to him; (3) he had enough time to discuss the matter with his attorney; and (4) he twice said that he was voluntarily waiving his right.

But there is a fundamental flaw in the State's argument. In order to convict Hutton of weapons misconduct in the third degree, the State was required to prove beyond a reasonable doubt *all* of the elements of the applicable felon in possession of a

---

[34](...continued)
(Alaska 1980) (explaining the standard at length, including giving deference to the superior court for the historical facts recited in its presence, but not making any reference to the importance of the confession happening out of the view of the court).

[35]      732 P.2d at 554; *see id.* ("The voluntariness inquiry involves three steps. First, the trial judge must find the external, phenomenological facts surrounding the confession. Second, from these external facts, the judge must infer an internal, psychological fact:  the mental state of the accused. Finally, the judge must assess the legal significance of this inferred mental state.").

weapon charge. Alaska Statute 11.61.200(a)(1) sets out four of these elements: "[1] knowingly [2] possess[ing] a firearm [3] capable of being concealed on one's person [4] after having been convicted of a felony." But there is an additional, necessary element that the State was required to prove: Hutton's culpable mental state with respect to the circumstances of his offense. As the court of appeals explained in *Afcan v. State*, "AS 11.81.610(b)(2) makes recklessness the applicable, culpable mental state," and "[a]s an aspect of the *mens rea* requirement in this case, *it was necessary for the [S]tate to establish that [the defendant] was aware of or recklessly disregarded the fact that he had been convicted of a felony.*"[36] In the trial judge's colloquy with Hutton, Hutton was advised that the State only needed to prove the four elements set out in AS 11.61.200(a)(1) to prove its case. Hutton was not advised that the State would also have to prove beyond a reasonable doubt that at the time Hutton possessed the handgun he was aware of or recklessly disregarded the fact that he was a felon.

At oral argument to this court, the State candidly conceded that "the omission of an element of the offense and the proof that would be required is a significant problem." When asked if the case would need to "go back on that element," the State's attorney acknowledged that "in all honesty, [he] would have to say yes. . . . It's an essential element of the offense [and] he wasn't advised of it."[37] The State's

_____

[36]   711 P.2d 1198, 1199 (Alaska App. 1986) (emphasis added).

[37]   Here is the full exchange between the court and the State's attorney at oral argument:

Justice Stowers: This is essentially the very beginning of the process and this is where the trial judge at this point is trying to get the defendant to admit the prior felonies. And so the court says, basically there are two elements to that crime: one is you're carrying a concealed firearm knowingly, which

(continued...)

[37](...continued)

the jury has already found, and the second one is that you have been convicted of a felony either as an adult or as a juvenile; are you willing to admit that? And then a little bit later . . . the trial judge talks a little about we can bring the jury back in and let the jury decide whether you're a prior felon.

But as has been pointed out here . . . to actually . . . have been convicted of the third-degree weapons misconduct the jury must find the defendant knowingly possesses a firearm capable of being concealed on the person after having been convicted of a felony, and that the defendant was reckless with respect to the fact that he had been previously been convicted of the felony. And the trial judge at no point discussed the recklessness element, and there is an argument that's being made that this recklessness element is quintessentially a factual question that Mr. Hutton was entitled to have a jury decide — not just did he possess knowingly a firearm that could be concealed, and not just did he have a prior felony conviction, but also that he recklessly disregarded the knowledge of this prior felony conviction.

My question is, in all of this colloquy, looking at this from a totality of the circumstances standard, how can I conclude reasonably that Mr. Hutton waived his right to a jury trial on this recklessly disregard element when it was never discussed with him; how could that be an intelligent waiver, how could it be a knowing waiver, and ultimately how could it be a constitutionally effective waiver? Or, to put it another way, and I'm not trying to prolong this, where is the substantial evidence, even if we were to accept your view, that his was knowing, and intelligent, and voluntary.

Mr. Rosenstein: That's a problem. I mean, the omission of an element of the offense and the proof that would be required is a significant problem.

(continued...)

forthright concession is commendable and well-taken. Hutton could not have made a knowing, intelligent, and voluntary waiver of his right to a jury trial when he was not advised of a necessary element of the charged offense and the State's burden to prove that element beyond a reasonable doubt. Hutton's conviction on Count III must be reversed and the case remanded for a new trial on that count.

## V.    CONCLUSION

We hold that when an appellate court reviews whether a defendant's waiver of the right to a jury trial was constitutionally effective, the applicable standard of review is the mixed question of law and fact standard. Because Hutton was not advised of an essential element of the charged offense in the trial court's colloquy regarding Hutton's purported waiver of his right to jury trial, we conclude Hutton's waiver was invalid and constitutionally ineffective. We therefore REVERSE the court of appeals' decision as to Count III and REMAND the case to the superior court for further proceedings consistent with this opinion.

---

[37](...continued)

> Justice Stowers: Does it have to go back on that element —
> that issue alone? Isn't that enough under either standard —
> the substantial evidence or the mixed question?

> Mr. Rosenstein: I . . . you know, in all honesty, I would have
> to say yes. I can't make a silk purse out of that. It's an
> essential element of the offense . . . he wasn't advised of it.