Michael L. RAE, Appellant,

v.

STATE of Alaska, Appellee.

No. A–4860.

Court of Appeals of Alaska.

Nov. 4, 1994.

Thomas A. Ballantine III, Anchorage, for appellant.

Nancy R. Simel, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

*OPINION*

COATS, Judge.

Michael L. Rae was tried before a jury on charges of second-degree criminal mischief,[1] reckless driving,[2] driving while license revoked (DWLR),[3] and failure to stop at the

---

1. Alaska Statute 11.46.482(a)(4).

2. Alaska Statute 28.35.040.

3. Alaska Statute 28.15.291.

direction of a police officer.[4] On the criminal mischief charge the jury convicted Rae of the lesser-included offense of third-degree criminal mischief.[5] Rae was convicted as charged on the other three counts.

As a result of Rae's disruptive behavior during pre-trial proceedings, the trial court, Superior Court Judge Charles K. Cranston, ordered Rae bound and gagged for the duration of his trial. We conclude that the trial court abused its discretion in resorting to these very extreme measures without first holding a full hearing and considering less restrictive measures. We therefore reverse Rae's convictions and remand the case for a new trial.

At the calendar call a few days before Rae's trial began, Rae asked for the dismissal of his court-appointed attorney, Gordon Goodman, and appointment of a new attorney. Judge Cranston denied the request, but Rae persisted in arguing and begging for a new lawyer. Rae eventually shoved Goodman, and Rae was then removed from the courtroom. Judge Cranston told Goodman to inform Rae that if he impeded the trial proceedings, the judge would have him gagged.

When court convened on the day set for trial, Rae asked the court to allow him to represent himself at trial. The court denied the request as untimely.[6] During the discussion of Rae's request to represent himself, Rae persisted in interrupting and arguing with the judge. Judge Cranston warned Rae that if he continued to disrupt the proceedings he would be "bound and gagged." Rae continued to interject arguments. He also, in Goodman's words, "started to make a move towards [Goodman]." Goodman "jumped out of the way so [Rae] couldn't do anything silly." The court ordered the judicial services officers to take Rae out and put him "in restraints" and gag him.

While Rae was out of the courtroom with the officers, the court asked the prosecutor whether he felt anything else had to be done to make a record of the reasons for restraining Rae. The prosecutor had no suggestions. Goodman told the court that he did not think that a conflict of interest had arisen due to Rae's actions toward him. He said he was ready to proceed as Rae's trial counsel. Goodman did not argue against the restraints, but said:

> I think it's really sad that he's going to be gagged as well as bound. I know the court doesn't want the jury prejudiced and he probably would say something on purpose that would cause a problem. It's going to be difficult for a jury to be fair to someone who's bound and gagged. I don't know the answer.

When Rae was brought back into the courtroom bound and gagged,[7] the judge told Rae that if Rae would indicate by nodding that he agreed not to disrupt the proceedings, the gag would be removed. Rae did not respond, so he remained gagged.

The prospective jurors were brought in and the court told them that "the fact of trial has been stressful to Mr. Rae to the extent that the court has found it necessary to impose restraints on Mr. Rae that would not ordinarily be imposed upon a defendant in a criminal case." The court said that the restraints had nothing to do with Rae's guilt or innocence, and were not to be considered as such.

The first panel of twenty prospective jurors was called to the jury box, and the judge asked whether the restraints on Rae caused any of the jurors to feel that they would be unable to give him a fair and impartial trial. Six of the twenty were excused because they said the restraints would impair their ability to be impartial. Of those six, two did not specify their problems with the restraints, two indicated that they thought the restraints were cruel and that they felt sorry for Rae, and two indicated that they thought the restraints made Rae look guilty. Six

---

4. Alaska Statute 28.35.182.

5. Alaska Statute 11.46.484(a)(2).

6. Our disposition of this case makes it unnecessary to consider Rae's claim that the court erred in denying his request to represent himself at trial.

7. The restraints consisted of leg shackles and a "belly chain" to which Rae was handcuffed.

more people were brought into the jury box and asked the same question. One of the new panelists said that it frightened her to see Rae restrained that way, and that she was also shocked that a defendant would be treated that way. Two other panelists agreed with these statements, and another said it looked to her like Rae could be a danger to the jurors. Those four jurors were excused. More panelists were seated and one more was excused after saying that she could not be fair because of the restraints. Later, another juror was challenged by the state and excused due to his reaction to the restraints. Another juror said, when questioned by Goodman, that he thought that the restraints made Rae look "like he's done something wrong. He's guilty of something." This juror was peremptorily challenged by the defense.

On the second day of trial, with jury selection still in progress, Judge Cranston gave Rae the opportunity to proceed without the gag (but with the physical restraints). The judge told Rae that if Rae would assure the court that he would not disrupt the proceedings, he would not be gagged from that point on. Rae refused to answer the court's inquiry. The court then asked both counsel whether they had any suggestions. The prosecutor said that he preferred not to have Rae gagged. The judge decided to proceed without the gag, so long as there were no interruptions. Goodman then told the court that Rae was unhappy with the idea of being bound but not gagged, and that he preferred being both bound and gagged to being only bound. Rae told the court that he believed it would make him look violent if he was bound but not gagged, and he argued that it was prejudicial to bind and not gag him because the real reason for both the restraints and the gag was his verbal protest. Rae promised the court that he would not assault anyone if the restraints were removed, but the judge explained to Rae that he felt it necessary to physically restrain Rae as a result of Rae's two attempts to assault Goodman.

Judge Cranston ruled that the trial would proceed with Rae bound but not gagged. The judge stated, "I am willing to risk at this point having no verbal restraint, believing that I can deal with any issues of mistrial, probably through instruction, and that nobody is placed in any physical danger." The judge changed his mind, however, when Rae said that he intended to make it known to the jury that he believed he had not been zealously represented by his attorney. After hearing this, the judge ordered Rae gagged again. Rae remained bound and gagged throughout the duration of the four-day trial.

■ In order to preserve the presumption of innocence, a defendant is entitled to "face the jury with the appearance and dignity of a free and innocent man," *Anthony v. State*, 521 P.2d 486, 495 (Alaska 1974), and "without the badges of custody," *Stern v. State*, 827 P.2d 442, 448 (Alaska App.1992). Society's interest in the progress of criminal trials must also be vindicated, however. To this end, "trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case." *Illinois v. Allen*, 397 U.S. 337, 343, 90 S.Ct. 1057, 1061, 25 L.Ed.2d 353 (1970).

■ Faced with a defendant's "flagrant disregard in the courtroom of elementary standards of proper conduct," a trial judge has at least three constitutionally permissible alternatives: binding and gagging the defendant, citing him for contempt, and removing him from the courtroom. *Allen*, 397 U.S. at 343–44, 90 S.Ct. at 1060–61. The Supreme Court cautioned, however, against the extreme disadvantages of trying a defendant while he sits bound and gagged:

[E]ven to contemplate such a technique, much less see it, arouses a feeling that no person should be tried while shackled and gagged except as a last resort. Not only is it possible that the sight of shackles and gags might have a significant effect on the jury's feelings about the defendant, but the use of this technique is itself something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold. Moreover, one of the defendant's primary advantages of being present at the trial, his ability to communicate with his counsel, is greatly reduced

when the defendant is in a condition of total physical restraint.

*Id.* at 344, 90 S.Ct. at 1061. *See also Spain v. Rushen,* 883 F.2d 712, 720–21 (9th Cir. 1989) (noting two additional problems with shackling a defendant: shackles "may confuse and embarrass the defendant, thereby impairing his mental faculties" and they may cause the defendant pain).

■ An "inherently prejudicial practice ... like shackling, should be permitted only where justified by an essential state interest specific to each trial." *Holbrook v. Flynn,* 475 U.S. 560, 568–69, 106 S.Ct. 1340, 1345–46, 89 L.Ed.2d 525 (1986). The use of shackles and other physical restraints is "justified only to protect the safety and decorum of the court, to prevent a threatened escape, or to respond to some other manifest necessity." *Anthony,* 521 P.2d at 496.

The Alaska Supreme Court has held that before resorting to measures such as shackling, the trial court must give the defendant an opportunity for a hearing, and must determine that the restraints to be imposed are "the least intrusive which will accomplish the desired result." *Id.* The trial court in this case did not hold a hearing before ordering Rae bound and gagged. Judge Cranston did not consider any less restrictive physical restraints than leg shackles and a belly chain with handcuffs,[8] nor did he consider alternatives such as citing Rae for contempt or excluding him from the courtroom.[9,10]

■ Rae stood trial in a condition of total physical and vocal restraint. The detriments of such a trial are manifest in the record here. It is clear from the comments of the prospective jurors during jury selection that the sight of Rae bound and gagged had a significant effect on the jurors' feelings about him. Moreover, the combination of gag and handcuffs presumably made any meaningful communication between Rae and his attorney during the trial impossible. Finally, the spectacle of a defendant gagged at the mouth and wreathed in chains is an affront to the dignity and decorum of judicial proceedings that Judge Cranston was seeking to uphold.

Judge Cranston's stated reason for ordering Rae shackled was to ensure the safety of Rae's attorney, and possibly of others in the courtroom. The gag was ordered as a result of Rae's persistent verbal interruptions of the trial call and pre-jury selection proceedings, and was continued when Rae made known his intention of letting the jury know that he thought his counsel was ineffective. We do not mean to suggest that Judge Cranston's concerns did not warrant preventive measures. Such extreme measures as were taken in this case, however, are permissible only after the defendant has been afforded a hearing and the court has determined that no less restrictive means would suffice. The lack of a hearing and the requisite findings in this case necessitate reversal of Rae's convictions.

Rae also claims plain error in the trial court's taking of conclusive judicial notice of one of the elements of DWLR. During the presentation of the state's case, the prosecutor asked the court to take judicial notice of the fact that Rae's driver's license had been revoked at the time of the offenses alleged in this case. Rae did not object to the prosecutor's proposal. The court told the jury:

I'm going to advise you that the court has taken judicial notice based upon records of the Division of Motor Vehicles that as of September 12, 1992, the Alaska operator's license of Michael L. Rae was suspended or revoked. The court will advise you in an instruction which we will give you at the end of the case of that judicial notice.

**8.** It does not appear that the court made any effort to hide Rae's shackles from the jury, for example by hanging a curtain around the defense table to conceal the leg-irons. *See, e.g., Stern v. State,* 827 P.2d 442 (Alaska App.1992); *Newcomb v. State,* 800 P.2d 935 (Alaska App.1990).

**9.** *See Allen,* 397 U.S. 337, 90 S.Ct. at 1057; *Rushen,* 883 F.2d 712 (suggesting that at least in some cases exclusion of the defendant from the

courtroom is a less drastic measure than binding and gagging).

**10.** On the second day of trial, the court did mention in passing the possibility of giving Rae the option of exclusion from the courtroom if he did not want to appear in chains. Neither the prosecutor nor defense counsel responded to the court's remark, and the possibility of excluding Rae from the trial was never seriously explored.

At the close of the trial, again without objection from Rae, the court instructed the jury:

I may take judicial notice of facts or events which are matters of common knowledge. When I declare that the court will take judicial notice of some fact or event, you must accept my declaration as evidence and regard as conclusively proved the fact or event which I have judicially noticed.

 The state concedes that the court's instruction regarding judicial notice constitutes reversible error. The concession is well taken. The taking of conclusive judicial notice of an element of a criminal charge violates Alaska Evidence Rule 203(c), and deprives the defendant of his right to be convicted only upon a jury's finding of proof beyond a reasonable doubt of every element of the offense. This is reversible error without regard either to whether there was an objection from the defense, or to whether the defendant suffered any prejudice other than having had his guilt adjudged by the wrong entity. *Fielding v. State*, 842 P.2d 614 (Alaska App.1992); *Smallwood v. State*, 781 P.2d 1000 (Alaska App.1989).

The judgment of conviction against Rae is REVERSED.