NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| TOLOOKQAQSIIQ HANK,<br><br>Appellant,<br><br>v.<br><br>STATE OF ALASKA,<br><br>Appellee. | Court of Appeals No. A-13652<br>Trial Court No. 3AN-19-00787 CR<br><br>O P I N I O N<br><br>No. 2779 — June 7, 2024 |

Appeal from the Superior Court, Third Judicial District, Anchorage, William F. Morse, Judge.

Appearances: Marianna C. Carpeneti, Carpeneti Law Office, LLC, Homer (opening brief) and Daniel Westerburg, Attorney at Law, Green Valley, Arizona (reply brief, oral argument, and supplemental brief), under contracts with the Office of Public Advocacy, Anchorage, for the Appellant. Diane L. Wendlandt (initial brief) and Hazel C. Blum (oral argument and supplemental brief), Assistant Attorneys General, Office of Criminal Appeals, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Harbison and Terrell, Judges.

Judge ALLARD.

Tolookqaqsiiq Hank was convicted, following a jury trial, of third-degree weapons misconduct (felon in possession) after his stepmother found him sleeping next

to a pistol.[1] Prior to trial, Hank's attorney stated that Hank would stipulate to two of the three elements required to prove felon in possession. Specifically, Hank would stipulate that he had previously been convicted of a felony and that he was aware that he had previously been convicted of a felony. Hank's attorney explained that Hank was stipulating to these facts for "strategic reasons" in order to prevent the jury from learning about the nature of his prior convictions.

The prosecutor agreed to the stipulation, provided that the court made clear that the stipulation constituted proof beyond a reasonable doubt of the elements covered by the stipulation. Hank's attorney agreed, and the superior court later instructed the jury that it "must" accept the stipulated facts as true. The jury ultimately convicted Hank, rejecting his defense that he did not knowingly possess the pistol. At sentencing, the court imposed a sentence of two years to serve, which was the lowest sentence within the applicable presumptive range.

Hank raises two arguments on appeal. First, he contends that it was structural error for the superior court to instruct the jury on the parties' stipulation without first obtaining his personal waiver of his right to a jury trial on the two elements of the offense that would be established by the stipulation. Second, Hank argues that the superior court plainly erred at sentencing by failing to find, *sua sponte*, the mitigating factor described by AS 12.55.155(d)(9) — *i.e.*, that his conduct was among the least serious within the definition of the offense. For the reasons explained here, we reject both claims of error and we affirm Hank's conviction and sentence.

*Underlying facts and prior proceedings*

At the time of the incident, Hank was staying with his father and stepmother, and was sleeping on the floor of their living room. According to the testimony at trial, when his stepmother woke up to get one of her children ready for

---

[1]   AS 11.61.200(a)(1).

school, she saw that Hank had a pistol lying on the floor next to him. She woke up Hank and told him to put the gun away because she was worried about the safety of her children. Instead, Hank rolled over to cover up the gun. Hank's stepmother then texted a person about the gun, who in turn called the police.

When the police arrived, they woke up Hank and found a pistol in a hat on the floor where Hank had been sleeping. Later, when Hank was searched at the jail, officers found five bullets in his pockets that matched the caliber of the gun. Both Hank's stepmother and his father testified that neither kept guns in the house.

Hank testified in his own defense. In his testimony, Hank denied ever knowingly possessing the firearm. Hank claimed that the first time he saw the gun was when the police woke him up. Hank's defense was that his stepmother had planted the gun on him so that he would be sent back to jail.

The jury rejected this defense and found Hank guilty of third-degree weapons misconduct. At sentencing, the defense attorney did not propose any mitigating factors and the superior court found none. The court sentenced Hank to 2 years to serve, the minimum sentence under the applicable presumptive range.[2]

This appeal followed.

*Hank's argument that it was structural error for the superior court to instruct the jury that they must accept the stipulated facts as true without first obtaining Hank's personal jury trial waiver*

To prove Hank guilty of third-degree weapons misconduct (felon in possession), the State was required to prove the following elements beyond a reasonable doubt: (1) Hank knowingly possessed a firearm capable of being concealed on his

---

[2] As a third felony offender convicted of a class C felony, Hank faced a presumptive range of 2 to 5 years to serve. *See* former AS 12.55.125(e)(3) (July 12, 2016 through July 8, 2019).

person; (2) Hank had previously been convicted of a felony; and (3) Hank was aware of, or recklessly disregarded the fact that he had been convicted of a felony.[3]

Prior to trial, Hank's attorney stated that Hank would stipulate that he had previously been convicted of a felony. She stated she was stipulating for "strategic reasons" — so that the jury would not hear any details about his prior convictions. The prosecutor stated that Hank would also have to stipulate that he was aware that he had a prior felony conviction.[4] Hank's attorney agreed that Hank would stipulate to this fact as well. The prosecutor further stated that the State would agree to a stipulation only if the language of the stipulation made clear that the stipulation satisfied those elements beyond a reasonable doubt. Hank's attorney agreed to this. The jury was subsequently instructed that the parties had stipulated that Hank had a prior felony conviction and that he was aware of that conviction, and therefore the jury "must" accept these facts as true. The prosecutor also told the jurors during closing arguments that they "d[id not] need to deliberate" on the elements that were covered by the stipulation because those elements were "already proven beyond reasonable doubt" through the stipulation.

Hank did not object to this course of action during the trial court proceedings. Nor is there anything in the record to suggest that Hank was in disagreement with the strategic decision to stipulate to these elements. But Hank nevertheless argues for the first time on appeal that it was error for the court to instruct the jury that it "must" accept the stipulated facts as true without first obtaining his personal jury trial waiver. He further argues that the failure to obtain his personal jury trial waiver was structural error — that is, it was error that requires automatic reversal

---

[3]  *See* AS 11.61.200(a)(1); *Afcan v. State*, 711 P.2d 1198, 1199 (Alaska App. 1986) ("As an aspect of the *mens rea* requirement in this case, it was necessary for the state to establish that [the defendant] was aware of or recklessly disregarded the fact that he had been convicted of a felony.").

[4]  *See Afcan*, 711 P.2d at 1199.

of his conviction *regardless* of whether he actually disagreed with his attorney's decision to stipulate, or whether that decision caused him prejudice.

Hank's argument partly rests on his assumption that a defense attorney's stipulation to facts that establish an element of a criminal offense necessarily qualifies as a defendant's waiver of the right to a jury trial on that element, such that a personal colloquy with the defendant is required under Alaska law. But we have previously rejected such an assumption in a number of published decisions.[5]

The first time we rejected this type of claim was more than twenty-five years ago in *Ross v. State*.[6] In that case, we clarified that "a defendant's willingness to stipulate to prior convictions does not answer the question of who will be the trier of fact on this element of the crime."[7] As we explained,

> Criminal cases are decided by jury unless the defendant waives the right to jury trial and the government consents to have the case tried to the court. In a jury trial, even when the parties reach a stipulation concerning the defendant's prior convictions, the stipulation will be presented to the jury, and the jury will decide the prior convictions element.[8]

We relied on this same reasoning in a more recent case, *Marshall v. State*.[9] *Marshall* involved a defendant who was charged with failure to register as a sex offender.[10] At trial, Marshall's defense attorney stipulated to the fact that Marshall was required to register as a sex offender in order to prevent the jury from learning that

---

[5]   *See Marshall v. State*, 436 P.3d 1065 (Alaska App. 2018); *Ross v. State*, 950 P.2d 587 (Alaska App. 1997); *Tallent v. State*, 951 P.2d 857 (Alaska App. 1997).

[6]   *Ross*, 950 P.2d at 591.

[7]   *Id.*

[8]   *Id.*

[9]   *Marshall*, 436 P.3d at 1068-69.

[10]   *Id.* at 1067.

Marshall's prior sex offense was for sexual abuse of a minor.[11] Like Hank, Marshall obtained the benefit of this stipulation at trial only to argue on appeal that his conviction should be reversed because the court accepted the stipulation without obtaining a personal waiver from Marshall.[12] Also like Hank, Marshall argued that the absence of a personal waiver was structural error requiring automatic reversal of his conviction, regardless of prejudice.[13]

We rejected this argument based on our reasoning in *Ross*. As we explained, "there is a distinction between a defendant stipulating to facts at a jury trial and a defendant waiving his right to a jury trial on those same facts."[14] Noting that Marshall's jury was instructed on all of the elements of the crime, including the element that was the subject of the stipulation, we concluded that a personal waiver was not required because the jury remained the fact finder.[15]

In *Marshall*, we acknowledged that the prosecutor had argued to the jury that "the State does not need to prove [the first element], with the stipulation," but we concluded that the prosecutor's statement (which was not objected to) was an inartful way of expressing what was otherwise true — which was that the stipulation *was* proof beyond a reasonable doubt that the State was entitled to rely on to meet its burden.[16]

This case is very similar to *Marshall*. Like in *Marshall*, the jury in Hank's case was instructed on all of the elements of felon in possession, including the elements

---

[11]   *Id.*

[12]   *Id.* at 1067-68.

[13]   *See id.* at 1069.

[14]   *Id.* at 1068.

[15]   *Id.* at 1068-69.

[16]   *Id.* at 1068.

that had been stipulated to by the defense. The jury was also instructed on the State's burden of proof beyond a reasonable doubt.

On appeal, Hank seeks to distinguish *Marshall* from his case on the ground that *Marshall* did not involve a mandatory stipulation instruction. The jury in *Marshall* was instructed only that the parties had "agreed" or "stipulated" to the facts of the non-contested element.[17] In contrast, Hank's jury was directly instructed that it "must" accept the stipulated facts as true. Hank argues that the mandatory stipulation instruction meant that the court was required to obtain a personal jury trial waiver from the defendant.

Hank bases his argument on two separate grounds. The first is some inartful language in *Marshall*. In describing the jury instructions in *Marshall*, we noted that "at no time was the jury instructed that the stipulation relieved the State of its burden of proving this element. And at no time was the jury told that, because of the stipulation, the jurors did not need to deliberate on this element of the offense."[18]

Hank argues that his case is distinguishable from *Marshall* because the prosecutor in his case told the jury that they did not need to "deliberate" on the elements covered by the stipulation because the elements had been "proven" by the stipulation. But this (unobjected-to) statement is similar to the (also unobjected-to) statement by the prosecutor in *Marshall*. In neither case was the State "relieved" of its burden of proving the elements; rather the stipulation functioned *as* the State's proof of those elements.[19] Likewise, even when the jury is instructed that it "must" accept a stipulation as true, it

---

[17]   *Id.* at 1067-68.

[18]   *Id.*

[19]   *See id.* at 1068 ("[T]he prosecutor was not arguing that the State did not have a burden to prove the first element beyond a reasonable doubt. Instead, the prosecutor was pointing out that the stipulation *was* evidence and that the State was entitled to rely on this evidence to meet its evidentiary burden on that element.").

is still the case that the jury remains as the fact finder, and it is the jury (not a judge) who ultimately finds the defendant guilty in such circumstances.[20]

Hank's case is therefore distinguishable from the cases that he cites in support of his argument that the superior court needed to obtain Hank's personal jury trial waiver before instructing the jury with a mandatory stipulation instruction. In his briefing, Hank cites to two cases — *Hutton v. State*[21] and *Lane v. State*[22] — that he asserts stand for the proposition that a trial court must obtain a defendant's personal jury trial waiver whenever an element of an offense is "taken away" from the jury. But in both cases, the element actually was literally "taken away" from the jury in the sense that the judge replaced the jury as fact finder.[23] That is why a personal jury trial waiver was required under Alaska law.

In *Hutton v. State*, for example, the defendant's trial for being a felon in possession was bifurcated.[24] During the first portion of the trial, the jury determined, *inter alia*, that Hutton had possessed a firearm.[25] The parties then discussed whether Hutton would proceed to a jury trial on the remaining elements of the charge, namely whether he had been convicted of a felony.[26] Hutton ultimately admitted to the element

---

[20]  *See id.* ("In a jury trial, even when the parties reach a stipulation concerning [an element of the offense], the stipulation will be presented to the jury and the jury will decide." (alterations in original) (quoting *Ross v. State*, 950 P.2d 587, 591 (Alaska App. 1997))).

[21]  *Hutton v. State*, 350 P.3d 793 (Alaska 2015).

[22]  *Lane v. State*, 382 P.3d 1188 (Alaska App. 2016).

[23]  *Hutton*, 350 P.3d at 794-95; *Lane*, 382 P.3d at 1191.

[24]  *Hutton*, 350 P.3d at 794.

[25]  *Id.*

[26]  *Id.*

and waived his right to a jury trial, accepting the trial judge as fact finder.[27] On appeal, the Alaska Supreme Court reversed because Hutton had not been notified that the State was actually required to prove an additional element: that he *knew or recklessly disregarded* the fact that he had been convicted of a felony.[28] The supreme court concluded that in the absence of notice as to this element, Hutton's waiver was not valid.

In *Lane v. State*, the defendant was convicted of various crimes after a jury trial.[29] His attorney then asked the superior court to make a post-verdict finding that Lane was "guilty but mentally ill."[30] A "guilty but mentally ill" verdict requires an additional "finding of fact over and above the specific elements of the defendant's crime" — namely, that "because of mental disease or defect, the defendant 'lacked the substantial capacity either to appreciate the wrongfulness of their conduct or to conform their conduct to the requirements of law.'"[31] The court made the requested finding after a brief colloquy with the defendant, in which the defendant indicated that he did not understand what his attorney was talking about.[32]

On appeal, this Court noted that it was not clear how to categorize the attorney's post-trial request for a "guilty but mentally ill" verdict, and that it could be categorized as either (1) an offer to enter a post-trial plea or (2) an offer to have Lane waive his right to a jury trial on the additional finding that distinguishes a "guilty but

---

[27] *Id.* at 794-95.

[28] *Id.* at 798-99.

[29] *Lane v. State*, 382 P.3d 1188, 1189 (Alaska App. 2016).

[30] *Id.*

[31] *Id.* at 1191 (quoting *State v. Clifton*, 315 P.3d 694, 700-01 (Alaska App. 2013)).

[32] *Id.* at 1190-91.

mentally ill" verdict from a verdict of "guilty."[33] But we concluded it was not necessary to resolve this question because we concluded the court was required to obtain Lane's "personal and knowing approval of the defense attorney's proposed waiver" in either case.[34]

Hank also cites to *Tallent v. State* in support of his claim that a mandatory stipulation instruction on one or more elements requires an on-the-record personal waiver from the defendant.[35] But *Tallent* is also inapposite. In *Tallent*, this Court noted: "[T]he fact that a defendant's prior convictions might be proved by stipulation (rather than through the introduction of testimony and/or documents) does not resolve the question of whether the jury or the trial judge will be the trier of fact on the issue of the prior convictions."[36] This Court then cited to an Alaska Supreme Court case, *Mead v. State*, as an example of a case in which the defendant's prior conviction was addressed through a stipulation, but the stipulation was given to the jury and the jury therefore remained the trier of fact on the stipulated element.[37] (Although *Tallent* does not expressly note this, it is worth noting that the stipulation instruction in *Mead* was mandatory, not permissive.[38]) This Court then contrasted the stipulation in *Mead*, where the jury remained the fact finder, with a situation in which the defendant personally

---

[33] *Id.* at 1191-92.

[34] *Id.* at 1191.

[35] *Tallent v. State*, 951 P.2d 857 (Alaska App. 1997).

[36] *Id.* at 863.

[37] *Id.* (citing *Mead v. State*, 445 P.2d 229, 234 (Alaska 1968)).

[38] *See id.*; *Mead*, 445 P.2d at 234.

waived their right to a jury trial and "consent[ed] to have the trial judge decide the question of the prior conviction."[39]

Hank is therefore incorrect when he claims that Alaska law supports his arguments. On the contrary, to the extent that Alaska case law exists in this area, it suggests that personal jury trial waivers are required when the judge replaces the jury as fact finder but are not required in the stipulation context, regardless of whether the stipulation instruction is permissive or mandatory in nature.

The second ground for Hank's claim — that a mandatory stipulation instruction can constitute structural error if it is not accompanied by a personal jury trial waiver — is a series of judicial notice cases issued by this Court in the late 1980s and early 1990s: *Smallwood v. State*,[40] *Rae v. State*,[41] and *Fielding v. State*.[42] In those cases, we held that it was structural error for the trial court to take conclusive judicial notice of an element of the offense.[43] In *Rae v. State*, for example, we reversed the defendant's conviction for driving while license revoked because the superior court took conclusive judicial notice of the fact that the defendant's license had been revoked.[44] As we explained, the court's instruction to the jury that it "must" accept the judicially noticed facts as conclusively proven violated Alaska Evidence Rule 203(c) and "deprive[d] the

---

[39] *Tallent*, 951 P.2d at 863.

[40] *Smallwood v. State*, 781 P.2d 1000 (Alaska App. 1989).

[41] *Rae v. State*, 884 P.2d 163 (Alaska App. 1994).

[42] *Fielding v. State*, 842 P.2d 614 (Alaska App. 1992).

[43] *Smallwood*, 781 P.2d at 1004-05; *Rae*, 884 P.2d at 167; *Fielding*, 842 P.2d at 615-16.

[44] *Rae*, 884 P.2d at 166-67.

defendant of his right to be convicted only upon a jury's finding of proof beyond a reasonable doubt."[45]

But in *Marshall*, we distinguished this line of cases on the ground that they involved judicially noticed facts rather than stipulated facts.[46] This distinction between judicially noticed facts and stipulated facts is reflected in the rules of evidence and in the current criminal pattern jury instructions.

Alaska Evidence Rule 203(c) states that "[i]n a criminal case, the court shall instruct the jury that it may, but it is not required to, accept as conclusive any fact judicially noticed." The current criminal pattern jury instruction follows this rule and states:

> When certain facts are generally known, or can be accurately determined from a reliable source, the law permits me to take judicial notice of those facts.
>
> I have taken judicial notice of the following fact[s]: (*State the fact[s] being judicially noticed*). You may conclude that [this fact is][these facts are] true, but you are not required to do so.[47]

In contrast, the criminal pattern jury instruction for stipulated facts uses mandatory language:

> The prosecution and the defense have agreed, or stipulated, to the following fact[s]: [*State the stipulated fact[s]*.]. Both parties accept these facts as true. Because there is no dispute about these facts, you also must accept them as true.[48]

---

[45]  *Id.* at 167.

[46]  *Marshall v. State*, 436 P.3d 1065, 1069 (Alaska App. 2018).

[47]  Alaska Criminal Pattern Jury Instruction 1.16A (2012).

[48]  Alaska Criminal Pattern Jury Instruction 1.16B (2012).

The "use note" for the pattern jury instruction does not assert that trial courts must obtain a personal on-the record waiver before giving the instruction.[49]

The distinction between judicially noticed facts and stipulated facts is also reflected in our recent decision, *Alvarado v. State*.[50] *Alvarado* involved a defendant who was charged with multiple counts of first-degree sexual abuse of a minor and incest for conduct involving his six-year-old daughter. One of the elements that the State was required to prove for each count was that the defendant was either over sixteen years old or over eighteen years old at the time of the offense.[51] At trial, the prosecutor requested that the superior court "take 'judicial notice'" of the defendant's birthdate.[52] This was technically error because a birthdate on a pleading is not the kind of fact that can be judicially noticed.[53] However, the defense attorney agreed that the court could take judicial notice of the defendant's birthdate, and the attorney confirmed the birthdate for the court.[54] The superior court subsequently instructed the jury using mandatory language. The jury was instructed, "Because that is judicial notice, you shall take that as a proven fact that the defendant was born February 2, 1975. That's not an issue."[55] The defense attorney did not object to this conclusive judicial notice instruction.[56]

---

[49]   *See id.*

[50]   *Alvarado v. State*, 440 P.3d 329, 331-34 (Alaska App. 2019).

[51]   *Id.* at 331.

[52]   *Id.*

[53]   *Id.* at 332-33.

[54]   *Id.* at 331.

[55]   *Id.*

[56]   *Id.*

However, on appeal, the defendant argued that the conclusive judicial notice instruction constituted structural error and required automatic reversal of his conviction. We acknowledged that there were cases where we had held that a conclusive judicial notice instruction constituted structural error.[57] But we distinguished *Alvarado* from those cases on the ground that the defense attorney had conceded the truth of the "judicially noticed" fact in *Alvarado*.[58] As we explained, in this circumstance, "[t]he court's primary error . . . was in using the words 'judicial notice' to describe what it was doing when, in truth, [the fact] had been stipulated to by both parties."[59] Chief Judge Mannheimer concurred in the judgment, concluding that there had been no error because the instruction should be viewed as a stipulation instruction despite the label the parties and judge had given it, and therefore "the judge could properly tell the jurors that they should consider this [fact] to be conclusively proved."[60]

Our reasoning in *Alvarado* is therefore predicated on the assumption that a trial court may properly instruct the jury on a stipulation using mandatory language and that doing so does not require a personal jury trial waiver from the defendant.

This is not to say that a personal waiver would necessarily be inappropriate in the stipulation context. As we explained in *Marshall*, there are jurisdictions that require a personal waiver from the defendant before accepting stipulations that essentially amount to a guilty plea.[61] There are also jurisdictions that

---

[57] *Id.* at 332.

[58] *Id.* at 332-33.

[59] *Id.* at 333.

[60] *Id.* at 337 (Mannheimer, C.J., concurring).

[61] *Marshall v. State*, 436 P.3d 1065, 1069 n.16 (Alaska App. 2018) (collecting cases).

prohibit trial courts from accepting stipulations to which the defendant has expressly objected.[62]

In his reply brief, Hank cites to various jurisdictions that require the trial court to obtain on-the-record personal waiver from the defendant before the jury can be instructed on a stipulation that covers an element of the charged offense.[63] But there are also many jurisdictions that do not require such waivers.[64]

---

[62] *Id.* at 1069 n.17 (collecting cases).

[63] *See, e.g.*, *Brown v. State*, 719 So. 2d 882, 889 (Fla. 1998); *State v. Lee*, 977 P.2d 263, 271 (Kan. 1999); *State v. Nichols*, 541 S.E.2d 310, 323 (W. Va. 1999), *superseded on other grounds by rule*, W. Va. R. Evid. 701; *Ferguson v. State*, 210 S.W.3d 53, 57-58 (Ark. 2005); *State v. Murray*, 169 P.3d 955, 964 (Haw. 2007).

We note that Hank appears to have incorrectly included Illinois as one of the jurisdictions that requires a personal colloquy. Hank cites to an intermediate appellate court decision that suggests that trial courts should require a personal colloquy. *See People v. Peete*, 743 N.E.2d 689, 695 (Ill. App. 2001). But he ignores later case law from the Supreme Court of Illinois that more squarely holds that a personal colloquy is only necessary "when counsel's stipulations render defendant's trial the 'practical equivalent of a plea of guilty.'" *People v. Phillips,* 840 N.E.2d 1194, 1203 (Ill. 2005) (citations omitted).

Hank also cites to a Colorado case, *People v. Oliver*, 452 P.3d 112, 117 n.3 (Colo. App. 2018), that does not appear to be on point. The procedural posture in *Oliver* is very similar to the procedural posture of *Hutton*, in that the jury entered an answer to a special interrogatory but was never instructed on the stipulated element and did not find the defendant guilty of the charged offense. *Id.* at 115-17; *see also Hutton v. State*, 350 P.3d 793, 794 (Alaska 2015). Under those circumstances, we would agree that a personal jury trial waiver is required. But this is different from the procedural posture of Hank's case, where the jury was instructed on all of the elements of the charged offense and it was the jury (not the judge) who found Hank guilty of the offense. We also note that the court in *Oliver* expressly states that "Colorado law suggests counsel can stipulate to an element," and it cites approvingly to state and federal cases where the courts have allowed counsel to stipulate without requiring a personal colloquy from the defendant. *Oliver*, 452 P.3d at 116-17.

[64] *See, e.g.*, *United States v. Ferreboeuf*, 632 F.2d 832, 836 (9th Cir. 1980) (holding that a defense attorney has implied authority for stipulation of element but cannot stipulate over a defendant's objection); *Poole v. United States*, 832 F.2d 561, 564 (11th Cir. 1987) (holding that stipulation to an element that a bank was federally insured is a tactical

Reviewing the case law from other jurisdictions, it appears that whether to require an on-the-record personal waiver before accepting a defense stipulation is ultimately a policy call on which jurisdictions differ. At its heart, an on-the-record personal waiver is a prophylactic measure.[65] It is designed to ensure that the defendant is in agreement with their defense attorney's concession(s), and it promotes judicial economy by avoiding challenges to the validity of stipulations on appeal or in post-conviction relief.

But as Professor LaFave writes, "the criminal justice process cannot readily require an open court waiver as to all rights that it deems 'fundamental.'"[66] Requiring a personal colloquy with the defendant comes at a cost, especially if it occurs in the middle of trial: it may slow down and confuse trial proceedings, disrupt the

---

decision that counsel is entitled to make); *United States v. Hicks*, 495 F. App'x 633, 643-44 (6th Cir. 2012) (concluding that a personal colloquy is only required if a stipulation amounts to a guilty plea); *People v. Adams*, 862 P.2d 831, 839 (Cal. 1993) (holding that whereas a personal colloquy is required for a guilty plea, it is not required for evidentiary stipulations that are not tantamount to a guilty plea); *People v. Phillips*, 840 N.E.2d 1194, 1203 (Ill. 2005) (holding that a personal colloquy is only required if the stipulation is the "practical equivalent of a plea of guilty"); *Commonwealth v. Walorz*, 944 N.E.2d 1061, 1065 (Mass. App. 2011) (concluding that no colloquy was required where the stipulation was insufficient by itself to sustain a conviction for the charged offense); *State v. Humphries*, 336 P.3d 1121, 1124-25 (Wash. 2014) (en banc) (holding that a stipulation cannot be accepted over defendant's objection, but that no personal colloquy is otherwise required); *see also State v. Hochrein*, 303 P.3d 1249, 1254-55 (Idaho App. 2013) (finding no plain error where a court did not conduct a personal colloquy because it was not obvious error); *State v. Roman*, 356 P.3d 185, 188 (Utah App. 2015) (dismissing the defendant's argument that a personal colloquy was required because the argument was not preserved and was not plain error).

We note that there are some federal cases that do not require personal colloquies even though they seemingly adopt Hank's view that an elemental stipulation waives the defendant's right to a jury trial on that element. *See, e.g.*, *United States v. Mason*, 85 F.3d 471 (10th Cir. 1996).

[65]  *See People v. Cross*, 347 P.3d 1130, 1132 (Cal. 2015).

[66]  3 Wayne R. LaFave *et al.*, *Criminal Procedure* § 11.6(c), at 931 (4th ed. 2015).

attorney-client relationship, and, if the remedy for failing to conduct a colloquy is automatic reversal, result in a windfall to defendants by requiring courts to conduct new trials even when the defendant knowingly, voluntarily, and intelligently agreed to their attorney's actions.[67] Deciding whether to require an on-the-record waiver of a defendant's personal right requires courts to balance these competing concerns.

Balancing those concerns here, we agree with the Washington Supreme Court and the Ninth Circuit, which have held that a stipulation to an element, unlike a guilty plea or a pretrial waiver of the right to a jury trial, does "not need to be accompanied by a colloquy on the record between the defendant and the trial court."[68] The courts explained, "Such a rule would needlessly delay and confuse the conduct of a typical trial."[69] Instead, "when a stipulation is agreed to by the defendant's attorney in the presence of the defendant, the trial court may presume that the defendant consents, *unless the defendant objects at the time the stipulation is made*."[70]

We conclude that this is an appropriate rule because defense stipulations generally concern facts about which no reasonable person could disagree and for which allowing the State to present affirmative evidence would pose a risk of serious prejudice to the defendant (*e.g.*, whether the defendant has previously been convicted of a crime).[71] Although some defendants may refuse to stipulate even under these

---

[67] *See id.*

[68] *Humphries*, 336 P.3d at 1124-25; *see also Ferreboeuf*, 632 F.2d at 836 ("Appellant asks that we make a rule requiring the trial court to question defendants personally as to the voluntariness of any stipulation of a crucial fact. This we decline to do.").

[69] *Ferreboeuf*, 632 F.2d at 836.

[70] *Humphries*, 336 P.3d at 1125.

[71] *See, e.g.*, *Marshall v. State*, 436 P.3d 1065, 1066 (Alaska App. 2018) (requirement to register as a sex offender); *Alto v. State*, 64 P.3d 141, 146 (Alaska App. 2003) (prior offense was a felony); *Tallent v. State*, 951 P.2d 857, 859 (Alaska App. 1997) (existence

circumstances, there is little reason to believe this is sufficiently likely to justify requiring an on-the-record colloquy in every case.

For these reasons, we hold that a court may accept a mandatory stipulation without first obtaining the defendant's on-the-record waiver as long as the stipulation does not effectively amount to a guilty plea and there is no indication in the record that the defendant disagrees with the decision to stipulate. We therefore reject Hank's claim that it was structural error for the court to accept the mandatory stipulation without first obtaining a personal waiver from Hank.

*Why we conclude that Hank's conduct was not among the least serious included in the definition of the offense*

At sentencing, Hank did not propose any mitigating factors. But on appeal, Hank contends that the superior court made findings during the sentencing hearing that supported the mitigating factor described by AS 12.55.155(d)(9) — that "the conduct constituting the offense was among the least serious conduct included in the definition of the offense." Specifically, the court stated:

> The particular charge is, you know, is modest. Misconduct Involving Weapons in the third degree, you know, a felon in possession is, you know — it's just you were asleep on top of a gun. I mean there was no use of it, there was no brandishing of it, there was no nothing. So the crime itself was — I won't say. If I had just the behavior of the crime itself, it would be amongst the least serious.

The court went on to say that, given Hank's extensive history of assaults, it still viewed the crime as requiring significant isolation. On appeal, Hank argues that the court plainly erred by not *sua sponte* finding the "least serious" mitigating factor.

---

of prior conviction); *Ross v. State*, 950 P.2d 587, 589 (Alaska App. 1997) (existence of prior convictions).

As a general matter, whether the conduct underlying an offense is among the least serious conduct included in the definition of the offense is a question of law.[72] We have reviewed the record, and we conclude that the evidence presented at trial did not establish that Hank's conduct was among the least serious conduct included in the definition of the offense. It is true that Hank was asleep for much of the time that he was possessing the gun during the relevant incident. But he also continued to possess the gun after his stepmother asked him to put it away, and he remained in possession of it when the police arrived. Moreover, the testimony that no one kept a gun in the house provided circumstantial evidence that Hank brought it into the house with him. And he did not secure the gun in a safe place that was out of reach of the children who he knew were in the home. Hank's conduct therefore falls within the relatively broad presumptive middle ground of conduct that the crime of third-degree weapons misconduct covers.[73]

*Conclusion*

The judgment of the superior court is AFFIRMED.

---

[72] *See Michael v. State*, 115 P.3d 517, 519 (Alaska 2005) (holding that the correct standard of review for the application of statutory aggravating and mitigating factors is *de novo* review).

[73] *See State v. Parker*, 147 P.3d 690, 695 (Alaska 2006) (explaining that aggravating and mitigating factors "identify[] relatively narrow circumstances that tend to make a given case atypical and place it outside the relatively broad presumptive middle ground" (quoting *Knight v. State*, 855 P.2d 1347, 1349 (Alaska App. 1993))).